IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD DICKERSON, LLOYD HALL, BRANDON REED, and HARRISON BROWN,<br><br>    Plaintiffs,<br><br>  v.<br><br>CAL WASTE SOLUTIONS, JIMMY DUONG, RUTH LIU, OSCAR RAMIREZ, STAN BEALE, RICH GROGAN, and DOES 1–50,<br><br>    Defendants.<br>                                     / | No. C 08-3773 WHA<br><br>**ORDER REQUESTING THAT PLAINTIFFS SHOW CAUSE AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

**INTRODUCTION**

In this race discrimination case, all defendants move to dismiss all ten of plaintiffs' claims on the following grounds:

- Plaintiffs have failed to exhaust their administrative remedies;

- Plaintiffs' state-law claims are pre-empted by Section 301 of the Labor Management Relations Act; and

- Plaintiffs have failed to state legally cognizable claims for sexual harassment, hostile work environment, and sexual battery.

In the alternative, defendants move to compel arbitration under the collective bargaining agreement. Defendants also move to dismiss plaintiffs' prayer for attorney's fees. For the

following reasons, with respect to claims one and three asserted under the Fair Employment and Housing Act, defendants' motion to dismiss is **GRANTED.** Plaintiffs' second and fourth claims are stayed pending arbitration. All other motions are **DENIED**.

**STATEMENT**

The following well-pled facts alleged in plaintiffs' complaint are assumed true for purposes of this motion. Plaintiffs Reginald Dickerson, Lloyd Hall, Brandon Reed, and Harrison Brown were truck-driver employees of California Waste Solutions, Inc., a recycling company. Plaintiffs Hall, Reed, and Brown are no longer employed by CWS, while plaintiff Dickerson is currently employed by CWS. They were supervised by defendants Jimmy Duong, Oscar Ramirez, Stan Beal, and Rich Grogan. Plaintiffs were all members of the International Brotherhood of Teamsters, Local 70. The Teamsters and CWS were parties to a collective bargaining agreement.[1]

Plaintiff Dickerson alleges that, in November 2007, defendant Ramirez began degrading him and touching him in a sexually offensive manner. All plaintiffs allege that defendant Ramirez made offensive racial statements. Plaintiffs contend that they did not voluntarily participate in the sexual conduct or welcome the offensive racial statements.

Plaintiffs informed CWS of this unwanted behavior. Plaintiff Dickerson informed CWS and its managers that one incident involving sexual contact was captured by a CWS video camera. Defendants Duong and Liu and plaintiff Dickerson allegedly viewed the video. Plaintiffs allege that some of the conduct was witnessed by Teamsters' shop steward, Luis Acevedo, but Acevedo did nothing to protect them. Plaintiff Dickerson advised Dominic Chiovare, the union business agent, but Chiovare refused to involve the union and advised plaintiff Dickerson to file a lawsuit against CWS.

---

[1] During the hearing, defendants' counsel stated that the collective bargaining agreement appended to plaintiffs' amended complaint did not cover plaintiffs because it was for another union. Plaintiffs' counsel was unable to confirm at the hearing whether they appended the correct collective bargaining agreement. Plaintiffs have since clarified that two collective bargaining agreements for different unions — the Local 350 and Local 70 unions — were appended to the complaint. According to plaintiffs' counsel, the Local 350 agreement was appended in error and the Local 70 agreement is the applicable collective bargaining agreement.

Plaintiffs contend that their overtime was severely reduced after they complained about the alleged offensive racial statements. Plaintiff Reed was terminated on January 3, 2008, thirteen days prior to the end of his probationary period. Plaintiff Hall alleges he was forced to resign on February 27, 2008, as a result of defendants' discriminatory actions. Plaintiff Brown previously filed a grievance against CWS and prevailed in arbitration. Plaintiff Brown contends that defendants thereafter reduced his pay and hours, made unreasonable requests, and ultimately terminated him in August 2008. Plaintiff Brown also alleges that defendants CWS and Grogan made false statements to third parties regarding Brown's personnel file.

On September 11, 2008, plaintiffs filed an amended complaint. The amended complaint alleges ten causes of action:

- hostile work environment;
- breach of contract;
- retaliation;
- breach of the covenant of good faith and fair dealing;
- violation of public policy;
- constructive termination;
- unlawful termination;
- defamation;
- sexual battery; and
- emotional distress.

Plaintiffs allege statutory violations under 42 U.S.C. 1981, 1983, 1985 and California Government Code 12900 and 12940 (Fair Employment and Housing Act), including racial discrimination and sexual harassment.

Defendants removed the case here and then filed a motion to dismiss. In the motion to dismiss, defendants contend that Section 301 of the Labor Management Relations Act, 29 U.S.C. 185, preempts plaintiffs' state-law claims. Defendants further contend that plaintiffs do not allege legally cognizable claims for sexual harassment, hostile work environment, and sexual battery. Defendants further contend that plaintiffs have failed to exhaust their

employer's internal grievance procedures, and that the claims in suit are subject to mandatory arbitration.

**ANALYSIS**

**1. LEGAL STANDARDS FOR DISMISSAL UNDER RULE 12(B)(6) AND 12(B).**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. The Supreme Court has recently explained that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (May 21, 2007) (citations and alterations omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

A Rule 12(b) motion to dismiss may be based on nonenumerated defenses, including a failure to exhaust nonjudicial remedies. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119–20 (9th Cir. 2003); *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988). In a nonenumerated Rule 12(b) motion, defendants move to dismiss plaintiffs' first through eighth and tenth claims for failure to exhaust nonjudicial remedies. "Nonenumerated Rule 12(b) motions are governed by the general motion provisions in the federal rules, including Rule 43(e), which permits the hearing of motions based on facts outside the record on affidavits submitted by the parties." *Ritza*, 837 F.2d at 369 (citations omitted). To reach a decision, the Court may look beyond the pleading and decide disputed issues of fact. *Ibid.* If plaintiffs have not exhausted their nonjudicial remedies, then the claims should be dismissed without prejudice. *See Wyatt v. Terhune*, 315 F.3d at 1119–20.[2]

---

[2] Plaintiffs argue that defendants improperly included a declaration signed by defendant Ruth Liu in support of its motion to dismiss. This point is moot, because this order does not rely on the declaration.

4

### 2. EXHAUSTION OF ADMINISTRATIVE REMEDIES.

Defendants argue that plaintiffs' statutory claims should be dismissed because plaintiffs failed to exhaust their administrative remedies. Defendants assert that plaintiffs must exhaust administrative remedies under Title VII or FEHA by obtaining a right-to-sue letter.

Plaintiffs did not assert any claims under Title VII. Plaintiffs instead assert their first (hostile work environment) and third (retaliation) claims under 42 U.S.C. 1981, which unlike Title VII, does not require plaintiffs to exhaust any administrative remedies. *See CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951, 1959–60 (2008). For this reason, dismissal of plaintiffs first and third claims asserted under Section 1981 is unwarranted.

Plaintiffs also assert their first and third claims under FEHA. FEHA requires that a complaint be filed with the Department of Fair Employment and Housing within one year of the unlawful practice. Cal. Gov't Code § 12960. While employees need not exhaust the employer's internal grievance process, exhaustion of administrative remedies is a precondition for a FEHA lawsuit. *Schifando v. City of Los Angeles*, 31 Cal. 4th 1074, 1081–82 (Cal. 2003). "Employees who receive a 'right to sue' letter from the Department may then proceed on their statutory causes of action in superior court." *Id.* at 1082. Plaintiffs have not alleged that they have exhausted their administrative remedies under FEHA by filing a complaint with the Department and obtaining a right-to-sue letter. Accordingly, plaintiffs' first claim for hostile work environment and third claim for retaliation under FEHA are **DISMISSED WITH PERMISSION TO SEEK LEAVE TO AMEND**. Defendants' motion to dismiss plaintiffs' first and third claims asserted under FEHA is **GRANTED**, but defendants' motion to dismiss plaintiffs' first and third claims asserted under Section 1981 is **DENIED**.

### 3. PREEMPTION AND SECTION 301.

Defendants move to dismiss all ten of plaintiffs' claims under Rule 12(b)(6) on the ground that the claims are preempted by Section 301. Plaintiffs counter that their claims are not preempted because they do not require any interpretation of the collective bargaining agreement. Section 301 of the LMRA provides federal jurisdiction over "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. 185. Section 301 requires

5

"first, an inquiry into whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted and our analysis ends there. If, however, the right exists independently of the CBA, we must still consider whether it is nevertheless 'substantially dependent on analysis of a collective bargaining agreement.' If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law." *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007) (citations omitted).

Whether or not the right is dependent on the collective bargaining agreement is interpreted narrowly. "A reference to or consideration of the terms of a collective bargaining agreement is not the equivalent of interpreting the meaning of the terms. Causes of action that only tangentially involve a provision of a collective-bargaining agreement are not preempted by section 301." *Detabali v. St. Luke's Hosp.*, 482 F.3d 1199, 1203 (9th Cir. 2007) (citations and quotations omitted).

### A. *Claims Two and Four.*

Defendants move to dismiss plaintiffs' second and fourth claims as preempted by Section 301. Plaintiffs' second claim alleges breach of a contract, one that was allegedly partly oral, partly written, and partly implied. Plaintiffs' fourth claim alleges breach of the covenant of good faith and fair dealing, which they assert is inherent in the contractual relationship between the parties. "[A] suit for breach of a collective bargaining agreement is governed exclusively by federal law under section 301." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987). Plaintiffs' contract claims are effectively claims for breach of the collective bargaining agreement and are therefore subject to preemption and recharacterization as Section 301 claims for breach of contract. *See Busey v. P.W. Supermarkets, Inc.*, 368 F. Supp. 2d 1045, 1054 (N.D. Cal. 2005) ("[W]here a relationship is otherwise governed by a collective bargaining agreement, state law theories of breach of contract and implied covenant

6

of good faith and fair dealing are preempted, and subject to recharacterization as Section 301 claim for breach of contract").[3]

Although plaintiffs argue that the second claim is based on independent rights not requiring interpretation of the collective bargaining agreement, plaintiffs expressly relied on terms and rights created by the collective bargaining agreement for their breach of contract claim. In alleging breach of contract, paragraph 59 of the complaint states that the "terms of the contract relied on by all plaintiffs included but were not limited to CWS personnel policy and procedures, workplace rules and a collective bargaining agreement." According to plaintiffs, defendants failed to treat them in accordance with defendants' policies and promises and they refused to allow plaintiffs' to perform under their contract. Plaintiffs essentially seek to enforce the collective bargaining agreement. Section 301 preempts state-law claims based directly on rights created by a collective bargaining agreement. *Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008). Accordingly, plaintiff's breach of contract claim is preempted by Section 301 and recharacterized as a Section 301 claim.

Plaintiffs also seek to enforce the terms of the collective bargaining agreement in alleging their claim for breach of the covenant of good faith and fair dealing. Plaintiffs allege that defendants made express and implied promises in connection with their employment relationship, which required defendants to act in good faith or fairness, to comply with their representations and procedures, and to not terminate plaintiffs without a fair and honest cause. Plaintiffs further allege that defendants breached the covenant of good faith and fair dealing by denying the existence of their contract with plaintiffs. Again, plaintiffs' claim is based on the terms and rights created by the collective bargaining agreement, which defines their employment relationship.

---

[3] Plaintiffs also allege breach of an oral and implied contract. Any purported oral and implied agreements of employment could only be effective as part of the collective bargaining agreement. The collective bargaining agreement is the exclusive agreement setting forth conditions of employment and plaintiffs' claims seeking to enforce the agreement are preempted. *See Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) ("where the position in dispute is 'covered by the CBA, the CBA controls and any claims seeking to enforce the terms of [an agreement] are preempted'"); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir.1987) (alleged oral contract between employee and employer regarding reinstatement controlled by collective bargaining agreement because the employee held position covered by collective bargaining agreement).

7

Furthermore, the implied covenant of good faith and fair dealing cause of action was "designed to protect the job security of employees who at common law could be fired at will. Generally no comparable lack of job security exists for unionized employees protected by a collective bargaining agreement." *See Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142 (9th Cir. 1988). Section 301 preempts a claim for breach of the implied covenant of good faith and fair dealing "when the employee enjoys comparable job security under a collective bargaining agreement." *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1411 (9th Cir. 1991). Plaintiffs' collective bargaining agreement provided job security comparable to the covenant of good faith and fair dealing that plaintiffs alleged was breached. Thus, plaintiffs' claim for breach of the covenant of good faith and fair dealing is preempted by Section 301 and recharacterized as a Section 301 claim.

Although plaintiffs' state-law claims for breach of contract and the covenant of good faith and fair dealing have been recharacterized as Section 301 claims, plaintiffs failed to satisfy mandatory prerequisites for bringing breach of contract claims under Section 301. Even though Section 301 allows an employee to sue his employer in federal district court to enforce the terms of a collective bargaining agreement, the "employee must first exhaust the grievance procedures established by the CBA." *Sidhu v. Flecto Co., Inc.*, 279 F.3d 896, 898 (9th Cir. 2002). Defendants contend that plaintiffs have not exhausted the grievance procedures outlined in the collective bargaining agreement, which plaintiffs do not dispute. Because plaintiffs have yet to properly exhaust their claims, this order will stay this matter with respect to the second and fourth claims and defer it to arbitration. *See Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 691 n.2 (9th Cir. 2001).

### B. Claims Five, Six, Seven, Eight, Nine, and Ten.

Defendants move to dismiss plaintiffs' fifth, sixth, seventh, eighth, ninth, and tenth claims as preempted under Section 301. Defendants contend that resolution of each of plaintiffs' claims will require interpretation of the collective bargaining agreement.

For plaintiffs' fifth claim of violation of public policy, sixth claim of constructive termination, and ninth claim of sexual battery, defendants conclusorily assert that these state-

8

law claims are inextricably intertwined with consideration of the terms of the collective bargaining agreement. Plaintiffs' fifth claim alleges that defendants violated public policy by terminating plaintiffs' in retaliation for their refusal to endure harassment and discrimination. Plaintiff Hall's sixth claim alleges that defendants constructively terminated him by forcing him to resign as result of the alleged harassment and discrimination. Plaintiff Dickerson's ninth claim alleges that defendant Ramirez subjected him to offensive sexual conduct. Resolution of the central issues for these claims – whether defendants sexually harassed and discriminated against plaintiffs and whether defendants retaliated by terminating plaintiffs – does not depend on an interpretation of the collective bargaining agreement. *See Detabali v. St. Luke's Hosp.*, 482 F.3d at 1203 (concluding that a discrimination claim that depended on whether the employee was legitimately terminated for refusing to work outside of her cluster or whether the employer discriminated against them did not require interpretation of the collective bargaining agreement). These claims arise from alleged unlawful conduct that is not covered by the collective bargaining agreement. Furthermore, defendants have not pointed to any part of the collective bargaining agreement that would require interpretation to resolve these claims.

Defendants have pointed to a portion of the complaint in which plaintiffs refer to the collective bargaining agreement in alleging their unlawful termination claim. In paragraph 98, the complaint states that defendants retaliated against plaintiff Reed "in violation of federal and state law, public policy, and CWS's contract with him by engaging in retaliatory conduct and continuing that conduct . . . in violation of federal and state laws and agreements plaintiffs had with defendant CWS." Reference to the collective bargaining agreement, however, is not enough to warrant automatic preemption. Section 301 only preempts a state-law claim when resolution of the claim requires that a term in the collective bargaining agreement be interpreted, rather than simply referenced. *See Detabali v. St. Luke's Hosp.*, 482 F.3d at 1203 (a discrimination claim was not preempted when the parties did not dispute the meaning of any of the relevant terms of the collective bargaining agreement, so that one only needed to reference, rather than interpret, the terms of the agreement to determine whether the employee was legitimately terminated).

9

1    Contrary to defendants' argument, "the bare fact that a [collective bargaining
2 agreement] will be consulted in the course of state-law litigation plainly does not require the
3 claim to be extinguished." *Burnside v. Kiewit Pacific Corp.*, 491 F.3d at 1060 (*quoting Livadas
4 v. Bradshaw*, 512 U.S. 107, 124 (1994)).  Defendants have not pointed to a specific term under
5 the agreement that is ambiguous and requires interpretation to resolve these claims.

6    Relying on *Hollins v. Kaiser Foundation Hospitals*, 727 F.2d 823 (9th Cir.1984),
7 defendants further contend that plaintiff Reed's seventh claim for unlawful termination should
8 be dismissed, because he was merely a probationary employee.  That decision is
9 distinguishable.  The collective bargaining agreement there specifically precluded probationary
10 employees from processing termination disputes through the grievance procedure.  *See Hollins
11 v. Kaiser Foundation Hospitals*, 727 F.2d 823, 825 (9th Cir. 1984).  Defendants, in this case,
12 have not pointed to any provision in the collective bargaining agreement that is ambiguous
13 regarding probationary employees or that even addresses different treatment for probationary
14 employees.

15    Defendants also argue that plaintiffs' defamation claim requires interpretation of the
16 collective bargaining agreement, because the claim is based on an employer's statements.
17 Plaintiffs' defamation claim alleges that defendant Grogan accused plaintiff Brown of a crime,
18 made false statements to terminate or force him to resign, and made false statements to third
19 parties about Brown's personnel file.

20    Defendants cite *Tellez v. Pacific Gas & Elec. Co.*, 817 F.2d 536, 538 (9th Cir. 1987) to
21 preempt the defamation claim.  In *Tellez*, the Ninth Circuit held that Section 301 did not
22 preempt the employee's defamation claim.  817 F.2d at 538.  "California's defamation law
23 establishes nonnegotiable rights and obligations independent of any labor contract.  One can sue
24 for defamation regardless of employment status or union membership."  *Ibid.*  The employee in
25 *Tellez* alleged that the employer defamed him by distributing copies of a suspension letter that
26 maliciously and falsely accused the employee of buying cocaine while at work.  The collective
27 bargaining agreement did not govern the employer's allegedly defamatory conduct because it
28 did not require that the employer send a suspension letter.  Accordingly, resolution of the

10

employee's defamation claim did not require interpretation of the collective bargaining agreement.

As in *Tellez,* interpretation of the collective bargaining agreement would not aid resolution of plaintiffs' defamation claim in this case. Defendants argue that the employer's statement "may have been" related to the grievance proceedings or "may have been" required by the collective bargaining agreement. Yet, defendants have not pointed to anything to indicate that these were indeed the circumstances. "[A]lleging a hypothetical connection between the claim and terms of the CBA is not enough to preempt the claim." *Burnside v. Kiewit Pacific Corp.*, 491 F.3d at 1060 (quoting *Cramer v. Consol. Freightways, Inc.* 255 F.3d at 689). Defendants also have not pointed to any provision of the collective bargaining agreement that governs the allegedly defamatory conduct. Accordingly, plaintiffs' defamation claim is independent of the collective bargaining agreement, and therefore, not preempted by Section 301.

With respect to the ninth claim for emotional distress, the motion contends that the claim is incidental to the alleged wrongful discharge, and whether the discharge is wrongful depends on the grounds provided in the collective bargaining agreement. The grounds for discharge in the agreement are not relevant to plaintiffs' claim of emotional distress, because plaintiffs do not rely on wrongful discharge as the basis for their claim. Rather, plaintiffs allege that defendants' failure to correct the alleged sexual and racially disparaging conduct caused plaintiffs to suffer emotional distress. Resolution of plaintiffs' claim depends on consideration of defendants' alleged unlawful conduct rather than an interpretation of the collective bargaining agreement. *See Tellez v. Pacific Gas & Elec. Co.*, 817 F.2d at 539 (finding emotional distress claims not preempted because they arose from conduct not covered by the collective agreement).

Because none of these claims require interpretation of the collective bargaining agreement, defendants' motion to dismiss plaintiffs' fifth, sixth, seventh, eighth, ninth, and tenth claims as preempted under Section 301 is **DENIED**.

### 4. EXHAUSTION OF REMEDIES UNDER THE COLLECTIVE BARGAINING AGREEMENT.

Defendants also move to dismiss claims five through eight and claim ten on the grounds that plaintiffs have not exhausted their remedies under the collective bargaining agreement. Defendants assert that the collective bargaining agreement expressly requires arbitration of plaintiffs' claims and the agreement contains an arbitration clause covering all federal causes of action arising out of employment. Defendants cite the following language from the agreement: "[t]he grievance procedure is intended to be the primary forum for resolution of any grievance, money claim or dispute arguably covered by the collective bargaining agreement, and the exclusive forum to the fullest extent permitted by law." An employee covered by a collective bargaining agreement is not required to exhaust the grievance procedures for claims that are not based on the collective bargaining agreement but arise from rights independent of that agreement. *See Albertson's, Inc. v. United Food & Commercial Workers Union*, 157 F.2d 758, 760–61 (9th Cir. 1998). Because this order finds, as described above, that plaintiffs' fifth, sixth, seventh, eighth, and tenth claims are neither covered by the collective bargaining agreement nor subject to preemption, exhaustion is not a bar. Defendants' motion to dismiss for failure to exhaust remedies under the collective bargaining agreement is **DENIED**.

### 5. ACTIONABLE CLAIMS.

Defendants argue that plaintiffs' claims of hostile work environment, breach of contract, violation of public policy, sexual battery, and emotional distress should be dismissed because plaintiffs did not allege facts that rise to the level of severity and pervasiveness to be actionable or to be construed as a hostile work environment. Plaintiffs can show a hostile work environment exists when the harassing behavior is "sufficiently severe or pervasive to alter the conditions of employment." *Pa. State Police v. Suders*, 542 U.S. 129, 133 (2004); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and quotations omitted).

Citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998), defendants assert that innocuous interactions, simple teasing and offhand comments are not actionable. To be actionable, "a sexually objectionable environment must be both objectively and subjectively

12

offensive, one that a reasonable person would find hostile or abusive." *See Faragher v. City of Boca Raton*, 524 U.S. at 788. Plaintiffs allege that defendants engaged in multiple retaliatory acts against plaintiff, made several offensive racial remarks, and racially discriminated against and sexually harassed plaintiffs on multiple occasions. Assuming that plaintiffs' allegations are correct, as one must under Rule 12(b)(6), such conduct could possibly constitute a hostile work environment. Plaintiffs have minimally stated actionable claims, and defendants' motion to dismiss on these grounds is **DENIED**.

### 6. ATTORNEY'S FEES.

Defendants move to strike plaintiffs' prayer for attorney's fees. Defendants argue that plaintiffs' state-law claims must be dismissed, and therefore attorney's fees are not recoverable as a matter of law. This order does not conclude, however, that all of plaintiffs' claims should be dismissed. It is possible that plaintiffs may recover attorney's fees. Defendants' motion to strike is **DENIED.**

### CONCLUSION

The pleadings in this case are a mess and the briefing has been of only marginal help. To the extent that any claim herein has been dismissed, plaintiffs may bring a motion to allow an amendment. Any such motion must include a proposed pleading. The motion must explain why the proposed pleading will state a claim. Any such motion must be filed by December 11, 2008 to be heard and briefed on a normal 35-day track. Leave to amend is otherwise denied. Also by December 11, plaintiffs must show cause in detail why this entire case should not be stayed pending exhaustion of all possible claims grievable under the collective bargaining agreement. This too shall be briefed and heard on the normal 35-day schedule and a hearing shall be held on **JANUARY 15, 2009, AT 8:00 A.M**.

**IT IS SO ORDERED.**

Dated: November 25, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

13