IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD DICKERSON, LLOYD HALL, BRANDON REED AND HARRISON BROWN,<br><br>Plaintiffs,<br><br>v.<br><br>CAL WASTE SOLUTIONS, JIMMY DUONG, RUTH LUI, OSCAR RAMIREZ, STAN BEALE, RICH GROGAN, and DOES 1–50,<br><br>Defendants. | No. C 08-03773 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR PARTIAL JUDGMENT ON THE PLEADINGS AND VACATING HEARING** |

**INTRODUCTION**

In this action for race and sex discrimination and sexual harassment, defendants move for partial judgment on the pleadings for the following claims:

    1.    Plaintiff Reginald Dickerson's claim for hostile work environment based on sexual harassment under both Article 1, Section 8 of the California Constitution and 42 U.S.C. 1981 against all defendants;

    2.    Plaintiff Dickerson's claim for hostile work environment and all plaintiffs' claims for retaliation under 42 U.S.C. 1983 against all defendants;

    3.    All plaintiffs' claims for retaliation under 42 U.S.C. 1981 against defendants Oscar Ramirez, Jimmy Duong, Ruth Liu, Stan Beale, and Rich Grogan;

    4.     All plaintiffs' claims for conspiracy to discriminate based on sex under 42 U.S.C. 1985 against all defendants;

    5.     Plaintiffs Dickerson and Harrison Brown's claims for defamation against defendants CWS, Ramirez, Beale, and Grogan; and

    6.     Plaintiffs Brandon Reed and Lloyd Hall's claims for emotional distress against all defendants.

For the following reasons, partial judgment on the pleadings is **GRANTED** in part and **DENIED** in part.

## STATEMENT

The following facts are not in dispute. Plaintiff Harrison Brown was a truck driver for California Waste Solutions, Inc., until August 11, 2008, when he was terminated. Plaintiff Brandon Reed was a truck driver for CWS from June 16, 2007, until his termination on January 3, 2008. Plaintiff Lloyd Hall was a truck driver for CWS but resigned on February 27, 2008. Plaintiff Reginald Dickerson began employment with CWS on September 14, 2000, as a truck driver, and is still employed there.

One of Dickerson's supervisors was defendant Jimmy Duong. Sometime in September 2007, defendant Oscar Ramirez became plaintiff Dickerson's supervisor. Defendants Ruth Liu, Stan Beale, and Rich Grogan were also managerial employees at CWS during the period of time when the alleged harassment and discrimination occurred.

The parties disagree on many of the facts surrounding the allegations. All plaintiffs allege that during their time at CWS they were subjected to various racial slurs and epithets. They claim that they were called names such as "black ass," "nigger," and "black cry baby" by defendant Ramirez. All plaintiffs claim that defendants Duong, Beale, Liu, and Grogan generally condoned, supported, and knowingly failed to remedy the inappropriate behavior of defendant Ramirez. Plaintiffs also state that their overtime was severely altered because of discrimination by defendants.

Plaintiff Dickerson claims that defendants failed to intervene in an appropriate manner after defendant Ramirez made unwanted sexual advances toward him. These alleged advances

2

1  included unwanted physical contact and sexually and racially offensive words that subjected him
2  to ridicule.  Defendants contend that defendant Ramirez's sexual advances were not offensive to
3  plaintiff Dickerson because both parties were engaging in a mutual joke.

4  Plaintiff Reed argues that he was terminated because he became friendly with the other
5  African American drivers, because he was black, and because he witnessed defendant Ramirez
6  make sexual advances towards plaintiff Dickerson.  Defendants reply that plaintiff Reed was
7  terminated at the end of his probation because he "did not cut it."

8  Plaintiff Brown claims that his treatment and subsequent termination was retaliatory due
9  to the complaints he filed regarding defendants' inappropriate behavior.  Defendants reply that
10 plaintiff Brown was terminated because he violated a condition of his employment by having a
11 suspended license, while plaintiff Brown claims his license was not suspended while with CWS.

12 Plaintiff Hall argues that he was treated differently from the non-black drivers, was
13 subjected to racially charged statements, and was retaliated against for complaining of racial and
14 sexual harassment and discriminatory treatment by defendants.  Plaintiff Hall further claims that
15 his resignation from CWS was a constructive discharge after he experienced personal and health
16 problems resulting from defendants' failure to address his complaints about the discriminatory
17 treatment.

18 On October 1, 2008, defendants filed a motion to dismiss pursuant to FRCP 12(b)(6), or,
19 in the alternative, to compel arbitration pursuant to FRCP 12(b) (Dkt. No. 35).  This motion
20 sought dismissal of all ten of plaintiffs' claims on the following grounds:

21     1. Plaintiffs failed to exhaust their administrative remedies under the
22 Fair Employment and Housing Act;
23     2. Plaintiffs' state-law claims were pre-empted by Section 301 of the
24 Labor Management Relations Act; and
25     3. Plaintiffs failed to state legally cognizable claims for sexual
26 harassment, hostile work environment, and sexual battery because all three claims
27 required interpretation of the collective bargaining agreement.
28

3

An order dated November 25, 2008, requested that plaintiffs show cause as to why the entire case should not be stayed pending exhaustion of all possible claims grievable under the collective bargaining agreement,[1] and granted in part and denied in part defendants' motion to dismiss (Dkt. No. 50). This order dismissed plaintiffs' claims for hostile work environment and retaliation brought under the FEHA. In addition, plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing were recharacterized as "Section 301 claims" and stayed, pending arbitration (*id.* at 8).

On December 11, 2008, defendants filed a motion for partial summary judgment and for judgment on the pleadings seeking to dismiss several of plaintiffs' claims on the following grounds:

    1.    Plaintiff Brown was properly, not wrongfully, terminated by defendants CWS and Duong because he had a suspended license, therefore his claims for retaliation and violation of public policy based on wrongful termination also failed;

    2.    Plaintiff Reed was not wrongfully terminated by defendant Duong because a supervisor cannot be held liable for the tort of wrongful discharge; and

    3.    Plaintiff Dickerson could not state a claim for defamation against defendants Beale and Grogan because he failed to show that defendants had the requisite intent for defamation (Dkt. No. 57).

An order was issued on April 30, 2009, denying defendants' motion for partial summary judgment or for judgment on the pleadings on all grounds (Dkt. No. 92).

On July 27, 2009, and August 3, 2009, defendants filed the present motions for partial judgment on the pleadings. These two motions are substantially the same. The only notable difference is that the July 27 motion only addresses plaintiffs' allegations against defendant Ramirez ("Motion One"), while the August 3 motion addresses plaintiffs' allegations against defendants CWS, Duong, Liu, Beale, and Grogan ("Motion Two").

---

[1] Plaintiffs satisfied this requirement, and an order dated January 21, 2009, denied defendants' motion to stay the entire action.

4

On August 13, 2009, plaintiffs filed an opposition to defendants' motion regarding defendant Ramirez ("Opp. One"). On August 19, 2009, Charles O. Thompson filed a notice of appearance as lead attorney on behalf of defendant Ramirez (Dkt. No. 166). On August 20, 2009, defendants filed a reply to plaintiffs' opposition regarding defendant Ramirez ("Reply"), and plaintiffs filed an opposition to defendants' motion regarding defendants CWS, Duong, Liu, Beale, and Grogan ("Opp. Two"). On August 27, 2009, after the Court granted permission, plaintiffs filed a supplemental opposition to defendants' motion regarding defendants CWS, Duong, Liu, Beale, and Grogan ("Suppl. Opp."). On September 4, 2009, defendant Ramirez filed a supplemental reply to plaintiffs' supplemental opposition.

## ANALYSIS

A motion for judgment on the pleadings under FRCP 12(c) may be granted only "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). We may not go beyond the pleadings to resolve any disputed issues when determining the outcome of the motion. Moreover, "[a]ll allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party." *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).[2]

1. **PLAINTIFFS' PROCEDURAL OBJECTIONS.**

   A. **Objection Under FRCP 11.**

Plaintiffs first object that defendants' motions should be denied under FRCP 11 because Charles O. Thompson, signatory to Motion One, was not defendant Ramirez's attorney of record at the time the motions were filed. This objection is frivolous. Mr. Thompson is now one of defendant Ramirez's attorneys of record (Dkt No. 166), and Rule 11(a) provides that the prompt

---

[2] Unless otherwise indicated, all internal quotations and citations within quoted text in this order have been omitted.

5

correction of such an error avoids dismissal of the motion.  Plaintiffs' Rule 11 objection is overruled.[3]

### B. Objection Under FRCP 12(g).

Plaintiffs also object that defendants' motions should be denied under FRCP 12(g) because defendants have already made prior motions for judgment on the pleadings and similar motions.  But plaintiffs ignore an exception to Rule 12(g)(2), which states: "*Except as provided in Rule 12(h)(2)* . . . a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  FRCP 12(g)(2) (emphasis added).  Rule 12(h)(2) allows motions for judgment on the pleadings to be brought under Rule 12(c) any time "[a]fter the pleadings are closed — but early enough not to delay trial."  FRCP 12(c).

Plaintiffs claim that the motions violate the order dated April 30, 2009, which denied defendants' motion for partial summary judgment or for judgment on the pleadings and stated that the time for hearing motions relating to the sufficiency of the pleadings had expired (Dkt. No. 92 at 7–8).  Although this order agrees that the repeated use of motions to test the sufficiency of the pleadings is generally undesirable, and that defendants have bombarded the docket with such motions, this order finds the present motions beneficial to the resolution of this case.  Courts have the discretion to allow additional motions to challenge the sufficiency of the pleadings, despite Rule 12(g), when such motions are "'not filed for the purpose of delay and [when] adjudication of the instant motion will narrow the scope of th[e] matter, greatly expediting resolution of the case.'"  *Stoffels v. SBC Communications, Inc.*, 430 F. Supp. 2d 642, (W.D. Tex. 2006) (quoting *Donnelli v. Peters Securities Co.*, No. 02 C 0691, 2002 U.S. Dist. LEXIS 16305, at *4 (D. Ill. Aug. 28, 2002)).  This justification applies to both motions presently at issue, and this order refuses to dismiss either motion on the ground that the April 30 order stated that the time period for hearing such motions had expired.

---

[3] Even if this order were to find otherwise, which it does not, plaintiffs have failed to explain why this objection would warrant dismissal of Motion Two, which was not signed or filed by Charles O. Thompson.

6

Plaintiffs contend that defendants' current motions were not made sufficiently early to avoid delaying trial. But the present motions *narrow* the scope of the claims that will be at issue at trial, thereby expediting, rather than delaying, resolution of this case. As a result, they will be entertained. Also, the case management order of October 2, 2008, listed the deadline for filing dispositive motions as August 6, 2009 (Dkt. No. 41), therefore such motions should not be wholly unexpected.

**2. DICKERSON'S SEXUAL HARASSMENT CLAIMS AGAINST ALL DEFENDANTS.**

**A. Dickerson's Claim for Hostile Work Environment Due to Sexual Harassment Under the California Constitution.**

Plaintiffs claim that their sex discrimination claims can be brought under Article 1, Section 8 of the California Constitution. But neither plaintiffs' First Amended Complaint, the operative pleading, nor subsequent filings stated a claim for sexual harassment under Article 1, Section 8 of the California Constitution. The First Amended Complaint mentioned the California Constitution only as follows:

> 60. It was not until Plaintiffs sought out assistance from someone other than defendants or the Union, to protect their rights guaranteed by the State of California and Federal Constitution and statutory laws that Defendant CWS began an investigation of the discrimination and sexual harassment claims of Plaintiffs.
>
> \*          \*          \*
>
> 71. Plaintiff's [sic] rights to be free from discrimination in employment are fundamental rights derived from the Federal and California State Constitution and statutory laws.
>
> \*          \*          \*
>
> 73. At all times mentioned and described in this complaint, Defendants agreed to, conspired to and overtly acted to deprive Plaintiffs of their rights guaranteed by the Federal and the State of California Constitutions, 42 U.S.C. §1981 and §1985.

After filing the first amended complaint on September 11, 2008, it is not until plaintiffs' current opposition of August 13, 2009 that suddenly plaintiffs explain in great detail that their sexual harassment claims are cognizable under Article 1, Section 8 of the California Constitution (Opp. One 5–9).

7

1    We have read all of the filings, and there is no mention of Article 1, Section 8 of the
2 California Constitution until plaintiffs' present oppositions. Normally, answers to
3 interrogatories are not filed with the Court. Plaintiffs have failed to bring to the Court's attention
4 any interrogatory or other omission where plaintiffs cured the shortfall. This was the time for
5 plaintiffs to bring such an omission to the Court's attention, and plaintiffs failed to do so.

6    The Court must evaluate a motion for judgment on the pleadings by considering *only the*
7 *face of the pleadings*. *See Hal Roach Studios,* 896 F.2d at 1550. Likewise, the Supreme Court
8 in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), held that notice pleading under FRCP
9 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled
10 to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon
11 which it rests." *Id.* at 555. *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009). Plaintiffs'
12 claims under the California Constitution in the First Amended Complaint do not even meet the
13 minimal requirements of *Twombly*. Plaintiffs cannot now enlarge prior vague references to the
14 California Constitution to construct specific detailed claims of the type now raised for the first
15 time. Plaintiffs have failed to state a material issue of fact against any defendant regarding
16 hostile work environment based on sexual harassment under Article 1, Section 8 of the
17 California Constitution on the face of the pleadings. Partial judgment on the pleadings on this
18 ground as to all defendants is granted.[4]

19  **B.    Dickerson's Claim for Hostile Work
          Environment Due to Sexual Harassment
20        Under 42 U.S.C. 1981.**

21    In their oppositions of August 13 and August 20, plaintiffs admit that 42 U.S.C. 1981
22 authorizes claims only for racial discrimination, not sexual harassment (Opp. One 5, Opp. Two
23 5). Nevertheless, plaintiffs argue that the issues of race and sex are entangled in this case, and
24 therefore a claim for sex discrimination should be allowed under Section 1981. But the

---

[4] Although plaintiffs' opposition to defendant Ramirez's motion briefly mentions California Civil Code 1708.5 and sexual battery (Opp. One 5, 8), this order finds it unnecessary to address these matters for two reasons. *First*, plaintiffs' first amended complaint only cites Section 1708.5 to support plaintiff Dickerson's ninth claim against defendant Ramirez for sexual battery, not to support any plaintiffs' sexual harassment claims (First Amd. Compl. ¶ 106). *Second*, defendant Ramirez's motion does not seek to dismiss plaintiff Dickerson's ninth claim against defendant Ramirez for sexual battery (Motion One 3, Motion Two 3). Thus, plaintiffs' Section 1708.5 claims are not implicated by this ruling.

8

Ninth Circuit does not interpret Section 1981 in this manner. Instead, it holds that while Section 1981 authorizes a claim for individuals discriminated against on account of their race, Section 1981 does not provide a claim based on sex discrimination or sexual harassment — not even when the sexual harassment or discrimination is allegedly intertwined with racial discrimination. *Jones v. Bechtel*, 788 F.2d 571, 574 (9th Cir. 1986). In sum, it is impossible for plaintiff Dickerson to allege a material issue of fact regarding a claim for sexual harassment under Section 1981 because Section 1981 does not support such claims as a matter of law. Partial judgment on the pleadings on this ground as to all defendants is granted.[5]

### 3. DICKERSON, HALL, REED, AND BROWN'S CLAIMS FOR HOSTILE WORK ENVIRONMENT AND RETALIATION UNDER 42 U.S.C. 1983 AGAINST ALL DEFENDANTS.

Defendants seek dismissal of plaintiffs Dickerson, Hall, Reed, and Brown's claims under 42 U.S.C. 1983 on the ground that Section 1983 requires state action. Indeed, Section 1983 provides a claim only if a defendant deprives a plaintiff of a right secured by the Constitution or the laws of the United States while acting *under color of state law*. *Jensen v. Lane County*, 222 F.3d 570, 574 (9th Cir. 2000). The requirement of action "under color of state law" in Section 1983 is analogous to the "state action" requirement in the United States Constitution. *Ibid.*

CWS is not a state actor. Rather, both parties acknowledge that CWS is a private company that contracts with the City of Oakland to collect and dispose of recyclable materials (Opp. One 12, Reply Br. 5–7). As a general rule, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982).

Plaintiffs suggest that the acts of CWS should be treated as state action because CWS is both funded and heavily regulated by the City of Oakland. But the United States Supreme Court has held that "detailed regulation of and substantial funding for private actors are not sufficient

---

[5] This order notes, however, that defendants do not dispute plaintiffs' claims for hostile work environment based on racial discrimination under Section 1981.

9

to transform the party's conduct into state action." *Jensen*, 222 F.3d at 575 (citing *Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982)). Plaintiffs also claim that CWS' contractual relationship or franchise agreement with the City of Oakland should be sufficient to show state action. But the Ninth Circuit holds that contracting with a state entity also does not, by itself, transform conduct into state action. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1538 (9th Cir. 1992). Plaintiffs have likewise failed to show that the City of Oakland had any connection to the adverse employment actions allegedly taken by defendants. A private entity can only be said to have acted under color of state law if it "jointly engaged with state officials *in the prohibited action*." *Dennis v. Sparks*, 449 U.S. 24, 28 n.4 (1980) (emphasis added).[6] Plaintiffs have not alleged that state officials participated in or condoned any discriminatory or harassing conduct perpetrated by defendants. Rather such behavior was tangential to the defendants' sanctioned job duties.

Plaintiffs claim that defendants should be found to have acted under color of state law because CWS, as collector and disposer of recyclable materials, performed a public "health and safety function."[7] The Supreme Court has stated that private activity only becomes a public function if the "function performed has been traditionally the *exclusive* prerogative of the State." *Rendell-Baker*, 457 U.S. at 842 (emphasis present in original). Moreover, the scope of the public function doctrine is narrowly defined, as "[w]hile many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'" *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978).

Although no decisions address the specific facts at issue in this case, the collection and disposal of recyclable materials is not a function that has been traditionally *exclusively* performed by the state. Activities that generally fall under the public function exception include

---

[6] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), cited by plaintiffs (Opp. Two 7), likewise holds that defendants can be sued under Section 1983 individually and in their official capacity only when the "[p]rivate persons [were] jointly engaged with state officials in the prohibited action." *Lugar*, 457 U.S. at 941.

[7] Plaintiffs cite *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), to support this claim. But *Monell* did not address the public function exception to the state action doctrine. Instead, *Monell* held that a municipality could only be sued for the actions of its employees under Section 1983 so long as the challenged conduct was the product of the employee carrying out official governmental policy. *Id.* at 692. As stated, this was not the situation in the present case.

10

when "private actors hold elections, govern a town, or serve as an international peacekeeping force." *Brunette v. Humane Society*, 294 F.3d 1205, 1214 (9th Cir. 2002). On the other hand, in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350–1 (1974), the Supreme Court held that the supplying of services by a privately owned and operated utility company subject to extensive state regulation did *not* constitute state action. In a footnote, *Jackson* categorized the following types of companies as not performing a traditionally *exclusively* state prerogative: "companies engaged in providing gas, power, or water; all common carriers, pipeline companies, telephone and telegraph companies, sewage collection and disposal companies; and corporations affiliated with any company engaging in such activities." *Id.* at 351 n.7. *Jackson* reasoned that classifying all businesses "affected with the public interest" as state actors would transform almost every single business into a state actor. *Id.* at 354. Collection and disposal of recyclable materials more readily falls into the latter category of functions than the former, and defendants were not engaged in a function that has been traditionally *exclusively* performed by the state.

Finally, plaintiffs claim that there was state action because defendants were performing state obligations delegated by the City of Oakland. Plaintiffs cite *West v. Atkins*, 487 U.S. 42 (1988), to support this theory. *West* held that a physician who treated a prison inmate's injuries had acted under color of state law because the state had delegated to him the state's constitutional obligation to provide medical care to prisoners. *Id.* at 54–7. *West* is distinguishable. The City of Oakland did not delegate a constitutional obligation to defendants to perform. Rather, defendant CWS sought out the contractual relationship with the City for financial reasons. Indeed, *West* even acknowledged that:

> Where the issue is whether a *private* party is engaged in activity that constitutes state action, it may be relevant that the challenged activity turned on judgments controlled by professional standards, where those standards are not established by the State. The Court has held that "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S., at 1004 (decisions of physicians and administrators of privately owned and operated nursing home to transfer Medicaid patients not state action); *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (discharge decisions of privately owned and operated school not state action). In both *Blum* and *Rendell-Bake*r, the fact that the private entities received state

11

> funding and were subject to state regulation did not, without more, convert thier [sic] conduct into state action. See *Blum v. Yaretsky*, 457 U.S., at 1004; *Rendell-Baker v. Kohn*, 457 U.S., at 840–843. The Court suggested that the private party's challenged decisions could satisfy the state-action requirement if they were made on the basis of some rule of decision for which the State is responsible. The Court found, however, that the decisions were based on independent professional judgments and were not subject to state direction. Thus, the requisite "nexus" to the State was absent.

*Id.* at 52 n.10 (emphasis present in original). In the present case, supervisors of a private employer allegedly decided to harass and discriminate against employees. It cannot fairly be said that the City of Oakland was responsible for or directed this alleged discrimination and harassment. As a result, there was no "nexus" to the state, and the exception presented in *West* applies.[8]

On the face of the pleadings, plaintiffs Dickerson, Hall, Reed, and Brown have failed to allege a material issue of fact under Section 1983 because recovery under Section 1983 requires state action as a matter of law. Partial judgment on the pleadings on this ground as to all defendants is granted.

### 4. DICKERSON, HALL, REED, AND BROWN'S CLAIMS FOR RETALIATION UNDER 42 U.S.C. 1981 AGAINST DEFENDANTS RAMIREZ, DUONG, LIU, BEALE, AND GROGAN.

Supervisors cannot be held accountable for claims of retaliation under 42 U.S.C. 1981. Section 1981 claims are analyzed under the same legal principles as those used in Title VII cases. *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004). The Ninth Circuit has "long held that Title VII does not provide a separate claim against supervisors or co-workers." *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007).

Plaintiffs cite several decisions in an attempt to prove that supervisors in fact can be held individually liable under Section 1981. These decisions do not support plaintiffs' claim.

---

[8] Plaintiffs cite *Brunette*, 294 F.3d 1205, in support of their delegation claim. But *Brunette* does not address delegation of state obligations. Instead, the portions of *Brunette* that plaintiffs cite, but do not explain, state that a "symbiotic relationship" between the private and state actor can be sufficient to constitute state action. *Id.* at 1213. In *Brunette*, the Ninth Circuit found no symbiotic relationship when "[w]ith or without the [private actor], the [state actor], funded by the State, would continue to execute its mission." *Id.* at 1214. Plaintiffs do not explain why the City of Oakland and defendants have a symbiotic relationship, and it is certainly not the case that the City of Oakland would be unable to function without its contract with CWS. No symbiotic relationship exists here.

12

Plaintiffs first misquote *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal. 4th 1158, 1168 n.4 (2008), wherein the court actually *refused* to express an opinion regarding whether supervisors can be held individually liable for retaliation. Plaintiffs then improperly cite *CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951, 1958 (2008), which held that Section 1981 prohibits retaliation by an *employer* but did not address whether a *supervisor* could be individually liable for such retaliation. Finally, plaintiffs reference a handful of decisions from the Fourth Circuit that authorize the imposition of liability against individual supervisors for retaliation in a limited circumstance. But Fourth Circuit cases cannot change the Ninth Circuit's settled rule, namely that supervisors cannot be held individually liable for their participation in retaliation against employees under Section 1981.

Partial judgment on the pleadings on this ground as to supervisors Ramirez, Duong, Liu, Beale, and Grogan is granted.[9]

### 5. DICKERSON, HALL, REED, AND BROWN'S CLAIMS FOR CONSPIRACY TO DISCRIMINATE BASED ON SEX UNDER 42 U.S.C. 1985 AGAINST ALL DEFENDANTS.

Defendants contend that plaintiffs have failed to state sufficient facts to support a claim for discrimination based on sex under 42 U.S.C. 1985(3). Defendants recite the rule in the Ninth Circuit that:

> [S]ection 1985(3) is extended beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights. More specifically, we require either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection.

*Sever*, 978 F.2d at 1536. But defendants cite no decisions stating that discrimination based on sex does not require "more exacting scrutiny" by the courts. To the contrary, both the Supreme Court and the Ninth Circuit have held that classifications based on gender require a heightened level of scrutiny. *See Craig v. Boren*, 429 U.S. 190, 197–98 (1976); *Scott v. Pasedena Unified*

---

[9] This order does not address plaintiffs' claims that defendant CWS is vicariously liable as a company for the acts of its supervisors and employees (Opp. Two 8) because defendants' present motions do not dispute plaintiffs' claims for retaliation under Section 1981 against defendant CWS.

13

*School District*, 306 F.3d 646, 663 (9th Cir. 2002). These courts have also held that "[i]t is possible to use § 1985(3) to attack conspiracies against a class defined by sex." *Padway v. Palches*, 665 F.2d 965, 969 (9th Cir. 1982). *See also Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 389 n.6 (1979) (White, J., dissenting) ("It is clear that sex discrimination may be sufficiently invidious to come within the prohibition of § 1985(3)").

This order does not determine whether plaintiffs have in fact *proven* that defendants engaged in a conspiracy to discriminate against plaintiffs based on their sex. But that is not the Court's role on a motion for judgment on the pleadings. Plaintiffs Dickerson, Hall, Reed, and Brown have alleged a material issue of fact regarding conspiracy to discriminate based on sex under Section 1985. Partial judgment on the pleadings on this ground as to all defendants is denied.[10]

### 6. DICKERSON AND BROWN'S CLAIMS FOR DEFAMATION AGAINST DEFENDANTS CWS, RAMIREZ, BEALE, AND GROGAN.

Plaintiffs Dickerson and Brown allege that defendant CWS, through its agents (defendants Ramirez, Beale, and Grogan), defamed plaintiffs by using racial slurs, falsely accusing them of committing a crime, and falsifying events. Defendants argue that these were mere statements of opinion, not false statements of fact, and thus are not actionable as defamation. Plaintiffs counter that these were not opinions, but actionable statements of fact that were defamatory.

Although defendants cite a handful of interesting and potentially relevant decisions, defendants misunderstand the Court's role and the plaintiffs' burden on a motion for judgment on the pleadings. On this claim, plaintiffs have raised issues of fact that, if proved, would result in plaintiffs' recovery, and defendants have countered with responses that, if proved, would defeat plaintiffs' recovery. Plaintiffs are correct that it is not the Court's proper role on a motion for judgment on the pleadings to determine whether the plaintiffs have *proven* a claim for defamation (Opp. One 10–11, Opp. Two 9). Partial judgment on the pleadings on this ground as to defendants CWS, Ramirez, Beale, and Grogan is denied.

---

[10] Defendants do not dispute plaintiffs' claims for conspiracy to discriminate based on race under Section 1985(3).

14

**7.   REED AND HALL'S CLAIMS FOR EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS.**

Defendants claim that since plaintiffs Reed and Hall have pled failed causes of action for retaliation against all defendants, their emotional distress claims against all defendants must likewise fail. This order agrees that *if* the plaintiffs do not have a viable retaliation claim, then they cannot have a viable emotional distress claim based on the failed retaliation claim. But even if all of plaintiffs Reed and Hall's retaliation claims fail, they may still prevail on their emotional distress claims that arise from their causes of action for hostile work environment based on racial discrimination (*see* First Amd. Compl. ¶ 108). Plaintiffs have alleged sufficient issues of material fact regarding emotional distress against all defendants on the face of the pleadings. Partial judgment on the pleadings on this ground as to all defendants is denied.

**CONCLUSION**

For the above reasons, partial judgment on the pleadings is **GRANTED IN PART AND DENIED IN PART**. In sum, after the dismissals in this order, plaintiffs' currently outstanding claims are as follows:

1.   Plaintiff Dickerson's claim for hostile work environment based on racial harassment and race discrimination under 42 U.S.C. 1981 against all defendants;

2.   All plaintiffs' claims for retaliation under 42 U.S.C. 1981 against defendant CWS;

3.   All plaintiffs' claims for conspiracy to discriminate based on race and sex under 42 U.S.C. 1985(3) against all defendants;

4.   All plaintiffs' claims for violation of public policy against defendant CWS;

5.   Plaintiff Hall's claim for constructive termination against defendants CWS, Jimmy Duong, and Does 1–50;

6.   Plaintiffs Reed and Brown's claims for unlawful termination against defendants CWS, Duong, and Does 1–50;

7. Plaintiffs Dickerson and Brown's claim for defamation against defendants CWS, Ramirez, Beal and Grogan;

8. Plaintiff Dickerson's claim for sexual battery under California Civil Code 1708.5 against defendant Ramirez; and

9. All plaintiffs' claims for emotional distress based on the outstanding claims listed above against all defendants

As stated, an order dated November 25, 2008, stayed two claims pending in favor of arbitration under Section 301. The Court is in the dark on the current status of these claims. By **FRIDAY, SEPTEMBER 11, 2009, AT NOON**, both sides shall advise the Court of the status of those claims and whether the trial date now set for October 13, 2009, should be postponed until the completion of arbitration.

The hearing set for September 17, 2009, at 8:00 a.m. is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: September 4, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

16